UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JENNA K.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00004-TWP-KMB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Jenna K. applied for disability insurance benefits from the Social Security Administration ("SSA") on May 7, 2019, alleging an onset date of February 15, 2018. [Dkt. 8-5 at 2.] Her application was denied initially and on reconsideration. [Dkt. 8-3 at 9, 21.] Administrative Law Judge William C. Zuber (the "ALJ") conducted a hearing on April 30, 2020, followed by a supplemental hearing on February 3, 2021. [Dkt. 8-2 at 38, 85.] The ALJ issued his decision on March 31, 2021, concluding that Jenna was not entitled to receive disability benefits. [*Id.* at 13.] The Appeals Council denied review on November 29, 2021. [*Id.* at 2.] Jenna timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [his] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotation marks and citation omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of

2

the impairments listed by the [Commissioner] . . . ; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

## II.  BACKGROUND

Jenna was born in 1989 and was twenty-eight years old at the alleged onset of her disability in 2018. [Dkt. 8-5 at 1.] She previously worked as a food service manager. [Dkt. 8-2 at 26.][2]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and concluded that Jenna was not disabled. [*Id.* at 19-27.] Specifically, the ALJ found as follows:

---

[2] The relevant evidence of record is amply set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

3

- At Step One, the ALJ found that Jenna had not engaged in substantial gainful activity[3] since her alleged onset date of February 15, 2018. [*Id.* at 19.]

- At Step Two, the ALJ determined that Jenna's severe impairments were rheumatoid arthritis, fibromyalgia, degenerative joint disease of the knees, anemia, morbid obesity, and depressive disorder. [*Id.*]

- At Step Three, the ALJ determined that no listings were met or medically equaled. [*Id.* at 19-21.]

- After Step Three but before Step Four, the ALJ found that Jenna had the RFC to perform light work, "except she is capable of simple, routine, one- to four step tasks; she could no more than occasionally stoop, crouch, crawl, kneel, balance, and climb ramps or stairs; she could never climb ladders, ropes, or scaffolds; she could frequently finger and handle with the upper extremities; she could sit for 30 minutes at a time; she could stand/walk for 30 minutes at a time; she could tolerate occasional exposure to extreme cold, vibration, dangerous machinery, or unprotected heights; and she could sustain concentration, persistence, and pace for periods of two hours at a time." [*Id.* at 21-26.]

- At Step Four, the ALJ determined that Jenna could not perform her past relevant work as a food service manager. [*Id.* at 26.]

- At Step Five, the ALJ determined that Jenna could perform the following jobs that existed in significant numbers in the national economy: office helper, cashier, and information clerk. [*Id.* at 26-27.] Accordingly, the ALJ determined that Jenna was not disabled at any time between her alleged onset date of February 15, 2018, and March 31, 2021, the date of the ALJ's decision. [*Id.* at 27-28.]

### III.   DISCUSSION

In seeking judicial review, Jenna contends that the ALJ erred in two ways. [Dkt. 10 at 3.] First, the ALJ erred in determining Jenna's RFC by failing to properly assess her subjective symptoms as required by SSR 16-3p. [*Id.* at 5-8.] Second, the testimony of vocational expert Dr. Crystal Younger did not constitute "substantial evidence." [*Id.* at 9-12.]

---

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a), (b).

**A. The ALJ's subjective symptom analysis was not patently wrong.**

Jenna asserts three errors with respect to the ALJ's subjective symptom analysis, arguing that: (1) the ALJ did not properly consider Jenna's Vectra scores; (2) the ALJ did not properly consider the testimony of Dr. Ellen Ballard; and (3) the ALJ improperly denied Jenna's motion for an additional medical expert. [*Id.* at 5-8.]

    *1. Vectra Scores*

A court will uphold the ALJ's decision "so long as it is supported by substantial evidence in the record." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). The substantial evidence standard "asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record)," as a claimant who has been found to not be disabled "is bound to believe that the finder of fact should have been more favorable to his cause." *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015). A claimant has the burden to show that the ALJ's decision is not supported by substantial evidence. *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014). An ALJ's findings about a claimant's symptoms are entitled to great deference and should be upheld unless "patently wrong." *See Summers*, 864 F.3d at 528. While the ALJ may not ignore an entire line of evidence that supports a finding of disability, it is not the Court's role to reweigh evidence that the ALJ considered. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010); *Palmer v. Saul*, 779 F. App'x 394, 400 (7th Cir. 2019).

When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process. First, he will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Second, "once an

5

underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including (but not limited to) the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8.

Here, the ALJ determined that Jenna's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" satisfying the first part of SSR 16-3p's test. [Dkt. 8-2 at 23.] Jenna takes issue, however, with the way the ALJ conducted the second part of the test set forth in SSR 16-3p regarding the evaluation of her symptoms, specifically alleging error as to the ALJ's consideration of her Vetra scores.[4] [Dkt. 10 at 6-7.] While Jenna acknowledges that the ALJ "does cite the Vectra scores in his decision," she argues that he "does not give it the credit that it commands as additional *objective* evidence." [*Id.* at 7 (emphasis in original).]

The Commissioner disagrees, highlighting the limitations that the ALJ did observe and noting that the ALJ did not discredit Jenna's reported symptoms wholesale. [Dkt. 12 at 10.] The Commissioner argues that the ALJ supplied many reasons for partially discounting Jenna's subjective allegations, including the numerous benign findings on Jenna's treatment notes and

---

[4] Vectra scores provide "a personalized score by measuring 12 biomarkers and incorporating information on age, gender and adiposity to measure [individuals'] RA inflammation and predict their risk of radiographic progression." *Vectra by Labcorp*, LABCORP (last visited Feb. 6, 2023), https://www.labcorp.com/rheumatology/vectra.

diagnostic testing and that Jenna's symptoms improved with treatment. [*Id.* at 10-11.] The Commissioner highlights the ALJ's findings that Jenna could perform routine daily activities with little to no assistance. [*Id.* at 11-12.]

The ALJ considered Jenna's Vectra scores—as she acknowledges—along with several other pieces of evidence when determining whether or not Jenna was disabled. The ALJ considered that Jenna "exhibited some tenderness at her rheumatology follow-ups" and "was noted to have abnormally high liver enzymes and a high Vectra score," and later that she "was considered to have uncontrolled inflammation based on her Vectra score." [Dkt. 8-2 at 23.] The ALJ found, however, that the other evidence on the record supported a finding that Jenna's limitations were not as severe as she had alleged. [*Id.* at 22-26.] Specifically, the ALJ pointed to Jenna's "largely unremarkable imaging without evidence of significant degenerative change or erosive arthritis, lack of overall joint swelling, recent records indicating [she] is stable rheumatologically, and minimal findings otherwise," ultimately finding that "further limitations are not warranted." [*Id.* at 23.] The ALJ additionally considered how Jenna's symptoms had improved with treatment. [*Id.* (citing Jenna's statement that she was "happy overall with her current progress despite ongoing discomfort" and noting that her condition had improved after beginning the medication Remicade).] The ALJ considered Jenna's daily activities, noting Jenna's statements that she can perform several tasks including tending to her personal and household needs and caring for her stepdaughter. [*Id.* at 20, 22-23.]

Instead of contesting the substance of the ALJ's analysis, Jenna asserts that he should have given her Vectra scores "the credit that it commands." [Dkt. 10 at 7.] This is asking the Court to reweigh evidence that the ALJ did consider as a part of his thorough analysis of numerous other factors and pieces of evidence. The ALJ gave "specific reasons that are supported by the record"

7

when assessing Jenna's symptoms, and this Court will not improperly reweigh the evidence considered in the proceedings before the ALJ. *Skarbek*, 390 F.3d at 505.

### 2. *Testimony of Dr. Ellen Ballard*

Jenna faults the ALJ for failing to include an additional limitation provided by Dr. Ellen Ballard, an examining physician, that Jenna "would be expected to be absent from work four or more days per month." [Dkt. 10 at 7.] The Commissioner in turn argues, as an initial matter, that Jenna has waived any argument with respect to Dr. Ballard's opinion because she failed to appropriately develop it. [Dkt. 12 at 15.] The Commissioner further asserts, waiver aside, that substantial evidence supports the ALJ's evaluation of Dr. Ballard's opinion in light of its lack of support in Dr. Ballard's own findings and inconsistencies with the rest of the evidence presented. [*Id.* at 15-20.] The Commissioner highlights that Dr. Ballard's opinions regarding Jenna's depression were outside her specialization and that her opinions were based on subjective reports rather than objective medical findings. [*Id.*]

When evaluating a medical opinion, an ALJ may consider the following factors: supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c. Of these factors, supportability and consistency are the most important. *Id.* An ALJ may also consider whether the opinion is based on subjective complaints (rather than medical techniques) and whether the medical opinion is outside of the professional's specialization. *White v. Barnhart*, 415 F.3d 654, 659-60 (7th Cir. 2005).

The Court finds that there is substantial evidence supporting the ALJ's evaluation of Dr. Ballard's opinion, and therefore it need not address whether Jenna's argument was waived. As detailed above regarding Jenna's Vectra scores, the ALJ did not fail to consider Dr. Ballard's

8

opinion entirely. *Jones*, 623 F.3d at 1162. Rather, he found that Dr. Ballard's opinions were not supported by her own findings and were inconsistent with other record evidence. [Dkt. 8-2 at 25.] The ALJ further took issue with the fact that certain of Dr. Ballard's evaluations were outside of her specialization—specifically, that Dr. Ballard was a physical medicine and rehabilitation physician but put forth opinions about depression—and that her findings regarding the effects of Jenna's depression "appear[ed] based upon subjective reports rather than objective medical findings." [*Id.*] Again, rather than finding substantive error with the ALJ's analysis of Dr. Ballard's findings, Jenna argues that he should have given Dr. Ballard's opinion more weight than he did. To reweigh this evidence would be improper, and the Court declines to do so.

3. *Motion for a Medical Expert*

Jenna next argues that the ALJ erred by failing to grant her motion for a medical expert to address her extent and level of pain and interpret the Vectra scores because the ALJ's "misinterpretation of the Vectra scores was outside his area of expertise." [Dkt. 10 at 7.] The Commissioner asserts that the ALJ's decision not to call an additional expert was within his discretion, particularly in light of the treatment notes and medical opinions that already took Jenna's Vectra scores into account. [Dkt. 12 at 14-15.]

Medical expert testimony may be helpful to an ALJ when making a determination as to a claimant's disability. However, "[a]n ALJ need not obtain medical expert testimony where the evidence on record is already adequate for discerning whether the claimant is or is not disabled. . . [and] an ALJ acts within his discretion in deciding not to call a medical expert at this stage of the sequential evaluation process." *Rutt v. Astrue*, No. 3:11–cv–00392–CAN, 2013 WL 1566319, at *10 (N.D. Ind. Apr. 12, 2013) (citing *Skarbek*, 390 F.3d at 504). Per the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), "[t]he need for

9

[medical expert] opinion evidence is generally left to the ALJ's discretion[.]"  HALLEX § I-2-5-32.

The ALJ determined that "[t]he evidence in this case does not warrant additional medical interpretation [regarding the Vectra scores], as other objective findings in the record provide enough information about the effects of the claimant's rheumatoid arthritis to assess residual functional capacity accurately." [Dkt. 8-2 at 17.] As detailed above, the ALJ properly considered Jenna's Vectra scores in his analysis and determined that additional medical expert testimony on the subject was not needed.  That determination was properly within the ALJ's discretion; accordingly, his denial of Jenna's motion for a medical expert was not erroneous.

### B. The testimony of vocational expert Dr. Crystal Younger constituted "substantial evidence."

At the February 3, 2021 hearing, vocational expert Dr. Crystal Younger testified regarding the number of available jobs in the national economy that an individual with Jenna's limitations would be able to perform, specifically that of an "office helper," "cashier," or "information clerk." [Dkt. 8-2 at 68-73.]  Part of Dr. Younger's analysis included an eighty-percent reduction in available jobs based on certain accommodations that an individual would need, specifically the availability of a stool or chair on which he or she could sit.  [*Id.* at 70-71.]  Dr. Younger testified that her answers were consistent with the Dictionary of Occupational Titles ("DOT"), and to the extent that questions were asked that are not in the DOT, her answers were based on her "education, experience, and qualifications."  [*Id.* at 73.]

Jenna alleges that Dr. Younger's testimony related to a reduction in available jobs, which Dr. Younger testified was based on her "education, experience, and training" rather than on "statistical analysis" or "anything scientific," was improper. [Dkt. 10 at 9-10.] Jenna argues that, despite the ALJ's "attempt[] to bolster [Dr. Younger's] testimony" by asking follow-up questions

10

regarding her estimated reduction, data to support the relevant jobs "not only wasn't produced, it does not exist." [*Id.* at 12.]

The Commissioner responds that Dr. Younger properly relied on both the DOT as well as her "education, experience, and qualifications" to assess the number of jobs in the national economy that Jenna could perform. [Dkt. 12 at 21.] The Commissioner argues that a vocational expert's experience and knowledge of the job market is a reasonable method of analysis. [*Id.* at 24-25.] The Commissioner further argues that, in any event, Jenna has waived any argument regarding Ms. Younger's testimony by failing to object to her testimony at the hearing. [*Id.* at 23-24.]

When determining whether there is "substantial evidence" to support an ALJ's decision, a court will "look[] to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla," but the "threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence means, "and means only," that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Whether a vocational expert's testimony constitutes substantial evidence will be answered on a case-by-case basis, "as is usually true in determining the substantiality of evidence." *Id.* at 1157. A vocational expert's testimony can be considered substantial evidence even when she does not disclose the data on which her analysis relies. *Id.* at 1156. Specifically with respect to a vocational expert's testimony regarding the number of jobs in the national economy, the Seventh Circuit has noted that such an "estimate will be just that—an estimate," given the many "variables

11

[that] combine to create uncertainty in a [vocational expert]'s job-number estimate." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

Vocational experts "are neither required nor expected to administer their own surveys of employers to obtain a precise count of the number of positions that exist at a moment in time for a specific job," as a vocational expert "necessarily must approximate, and there is no way to avoid uncertainty in doing so." *Id.* While surveys are not required, a vocational expert must still "ensure that the approximation is the product of a reliable method," and may rely on "past experience . . ., knowledge of national or local job markets, or practical learning from assisting people with locating jobs throughout the region, to offer an informed view on the reasonableness of his [or her] estimates." *Id.* at 968-69. "When offering testimony, the experts may invoke not only publicly available sources but also information obtained directly from employers and data otherwise developed from their own experience in job placement or career counseling." *Biestek*, 139 S. Ct. at 1152-53 (internal quotation marks and citation omitted).

As acknowledged by the Seventh Circuit, any estimate as to the number of jobs that Jenna can perform in the national economy will necessarily be just that—an estimate. *Chavez*, 895 F.3d at 968-69. Dr. Younger is accordingly permitted to rely on the DOT as well as her own experience placing individuals in jobs and her knowledge of local and national labor markets. *Id.* This is precisely what she has done, relying on the DOT as well as more than thirty years placing individuals with disabilities in jobs. [Dkt. 8-2 at 73, 76.] Though Jenna insists that the Supreme Court's decision in *Biestek* requires the use of the "scientific method," [dkts. 10 at 11; 13 at 3-4], this requirement is not found in the *Biestek* decision and this Court declines to extend it as such. Accordingly, Jenna has failed to show that Dr. Younger's approximations were not the result of reliable methodology, and the Court finds that such testimony constitutes substantial evidence

supporting the ALJ's findings. Accordingly, since the Court finds that the testimony of Dr. Younger constitutes substantial evidence, it will not address whether Jenna waived argument regarding the same.

## IV. CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **AFFIRM** the Commissioner's decision that Jenna was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

**SO RECOMMENDED.**

Date: 2/7/2023

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all ECF-registered counsel of record via email generated by the Court's ECF system.